IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:19-cv-00146 |
| ) | |
| 0.19 ACRES OF LAND, OWNED BY ) | By: Elizabeth K. Dillon |
| CLETUS WOODROW BOHON AND ) | United States District Judge |
| BEVERLY ANN BOHON, and 2.74 ACRES ) | |
| OF LAND, OWNED BY CLETUS ) | |
| WOODROW BOHON AND BEVERLY ) | |
| ANN BOHON, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mountain Valley Pipeline (MVP) is constructing an interstate natural gas pipeline. MVP commenced a condemnation action under the Natural Gas Act, 15 U.S.C. § 717 *et seq.*, to acquire permanent and temporary easements on numerous properties, including these properties located in Montgomery County. On March 7, 2018, the court entered orders in the primary condemnation case, *Mountain Valley Pipeline LLC v. Easements to Construct*, Case No. 7:17-cv-492 (W.D. Va.) (Dkt. Nos. 546, 552), granting MVP immediate possession of the easements on these properties.

MVP filed an omnibus motion in limine (Dkt. No. 12) and a motion to exclude the expert testimony of Dennis Gruelle (Dkt. No. 11). Defendants Cletus Woodrow Bohon and Beverly Ann Bohon have moved for a jury view of their property (Dkt. No. 16) and to open and close at trial and sit at counsel table closest to the jury (Dkt. No. 18). The court held a hearing on these motions and took the motions under advisement.

For the reasons stated below, MVP's motion in limine is granted in part and denied in part, MVP's motion to exclude Gruelle's testimony is granted, and defendants' motion to open and close

at trial and sit closest to the jury is granted. The court will deny, without prejudice, defendants' request for a jury view. Defendants may renew that motion nearer in time to the new trial date.

## I. BACKGROUND

On October 13, 2017, the Federal Energy Regulatory Commission (FERC) issued an order for MVP to construct, maintain, and operate a natural gas pipeline along a route that includes the Property (the Approved Route). On October 24, 2017, MVP filed an action to condemn easements along the Approved Route on the Property (Easements) under Section 7 of the Natural Gas Act, 15 U.S.C. § 717f. On October 27, 2017, MVP moved for partial summary judgment that it is authorized to condemn the Easements and a preliminary injunction granting immediate possession for construction. On January 31, 2018, the court issued a memorandum opinion and order granting MVP's motion for partial summary judgment and conditionally granting MVP's motion for immediate possession upon a determination of appropriate security. On March 7, 2018, the court set deposits and bonds for the Property and granted MVP immediate possession of the Easements effective upon making the required deposit and posting the required bond.

MVP has condemned an easement over tracts owned by defendants, identified in the main pipeline case complaint as MVP Parcel Nos. VA-MO-022 and VA-MN-5233 (the Property). MVP is taking temporary workspace of 1.65 acres and a permanent easement of 1.09 acres, for a total of 2.74 acres over MVP Parcel No. VA-MO-022. MVP is also taking a temporary access easement of 0.19 acres over MVP Parcel No. VA-MN-5233.

II.  DISCUSSION

A.  **Legal Standards**

The motions present various issues of just compensation in eminent domain cases as well as issues involving the qualification of experts and their reliability and relevance.  Legal standards regarding the same are set forth herein.

### 1.  Just compensation for partial permanent takings, including severance damages

The Takings Clause of the Fifth Amendment prohibits the taking of private property without just compensation.  *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 536 (2005).  When the government condemns private property for a public purpose, it must pay just compensation for that property.  Just compensation is the monetary equivalent of the property taken, and the federal courts have employed the concept of "fair market value" to determine the condemnee's loss.  *United States v. 564.54 Acres of Land*, 441 U.S. 506, 510–11 (1979); *Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 473–74 (1973).

Unless otherwise proscribed by Congress, federal law governs "questions of substantive right, such as the measure of compensation" for federal courts in condemnation proceedings.  *United States v. Miller*, 317 U.S. 369, 379–80 (1942).  *See also Tenn. Gas Pipeline Co. v. Permanent Easement for 1.7320 Acres*, No. 3:cv-11-028, 2014 WL 690700 (M.D. Pa. Feb. 24, 2014) (unpublished) (concluding that federal law applies in determinations of just compensation under the Natural Gas Act).  The Fourth Circuit defines just compensation in a case of partial taking as "the value of the land taken plus the depreciation in the market value of the remainder."  *United States v. 97.19 Acres of Land*, 582 F.2d 878, 881 (4th Cir. 1978) (citing *W. Va. Pulp & Paper Co. v. United States*, 200 F.2d 100, 104 (4th Cir. 1952)).  Moreover, "value [of the condemned land] is to be ascertained as of the date of taking."  *Miller*, 317 U.S. at 374.

In *W. Va. Pulp & Paper*, the Fourth Circuit recognized the well-settled principle that "whenever there has been an actual physical taking of a part of a distinct tract of land, the compensation to be awarded includes not only the market value of that part of the tract appropriated, but the damage to the remainder resulting from that taking, embracing, of course, injury due to the use to which the part appropriated is to be devoted." 200 F.2d at 102. The court recognized that the landowner was damaged not only by the loss of the land, but also by the proposed use that caused depreciation to the remainder, and therefore was entitled to be awarded a sum that "would put it in as good position pecuniarily as it would have been if its property had not been taken." *Id.* at 103. The measure of this sum was "the value of the land taken plus the depreciation in the market value of the remainder due to the use made of the part taken." *Id.* at 104. *See also 97.19 Acres of Land*, 582 F.2d at 881 (citations omitted) (explaining that severance damages to the remainder, if any, are measured as "the difference in market value of the residue before and after the taking").

**2. Damages for perceived market negative influences**

In a previous opinion, this court analyzed the law with regard to testimony about damages resulting from perceived market negative influences, such as the perceived danger, or unsafe nature, of pipelines. *See MVP v. 1.23 Acres* (Eagle's Nest), Civil Action No. 7:18-cv-00610 (W.D. Va.), Dkt. No. 55; *MVP v. 6.50 Acres* (Sizemore), Civil Action No. 7:18-cv-00612 (W.D. Va.), Dkt. No. 66. The court will not repeat that entire analysis here, but merely incorporates it by reference. By way of summary, the court held that, to be admissible, an expert's opinions with regard to some hazard incident to the use of the property taken must be supported by some evidence that the hazards are reasonably probable and more than just speculative. Moreover, there must be a nexus between those hazards and/or the public perception in the marketplace—specifically, the

marketplace for that property—and a diminution in value of the property. In other words, there must be a causal link between the hazard inherent in the taking and a direct loss in the marketplace. *United States v. 760.807 Acres of Land*, 731 F.2d 1443, 1448 (9th Cir. 1984); *see also Atl. Coast Pipeline LLC v. 0.07 Acres*, No. 3:18-cv-00006, 2019 WL 2527571, at *14–17 (W.D. Va. June 19, 2019) (excluding an expert environmental professional's opinion about a natural gas pipeline's effect on property value because the analysis was not linked to the specific property's value and was therefore irrelevant to the determination of just compensation).

### 3. Expert testimony

Federal Rule of Evidence 702 and the standards established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), govern admissibility of expert testimony. Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Before considering whether a proffered expert's testimony is reliable, the court first determines whether the witness qualifies as an expert. A witness may qualify as an expert on the basis of "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The expertise must relate to the areas in which the expert is expressing opinions. *See Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 800 (4th Cir. 1989). Exclusion should occur only where all bases for expertise are lacking with regard to the issue for which the opinion is offered, and a proffered expert

5

"need not be precisely informed about all details of the issues raised in order to offer an opinion." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) (quoting *Thomas J. Kline, Inc.*, 878 F.2d at 799).

While the test for exclusion may be a "strict one," *Kopf*, 993 F.2d at 377, some type of relevant expertise is nonetheless required. For example, where experience is one of the bases for a witness's expertise, the witness must "explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *Radiance Found., Inc. v. Nat'l Ass'n for the Advancement of Colored People*, 27 F. Supp. 3d 671, 674 (E.D. Va. 2013) (alteration in original) (citations omitted). Additionally, a witness's expertise must be tailored, to some degree, to the specific opinions offered and the particular facts in the case; general expertise or knowledge on a broad topic or general field may be insufficient, depending on the facts of a case. *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 391–92 (D. Md. 2001) ("The fact that a proposed witness is an expert in one area, does not *ipso facto* qualify him to testify as an expert in all related areas.") (citing *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 247 (4th Cir. 1999)).

After ensuring that an individual qualifies as an expert, this court has an obligation under *Daubert* to act as a gatekeeper and ensure that any testimony concerning scientific, technical, or other specialized knowledge offered in support of a party's claim is "not only relevant, but reliable." 509 U.S. at 589; *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting same). The proponent of the testimony must establish its admissibility, although it need not prove its expert's theory is correct. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001); *Md. Cas. Co. v. Therm–O–Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998). First, the trial court must ask whether proffered scientific evidence is valid and reliable. *United States v. Barnette*, 211 F.3d 803, 815 (4th Cir. 2000). Second, the court asks whether the evidence will help the trier of fact, which is

generally a question of relevance, or "fit." The court must ask if, assuming the evidence is reliable, it will "assist the trier of fact to understand or determine a fact in issue." *Md. Cas. Co.*, 137 F.3d at 783 (quoting *Daubert*, 509 U.S. at 592).

The court's role in limiting expert testimony is important: "due to the difficulty of evaluating their testimony, expert witnesses have the potential to be both powerful and quite misleading." *Cooper*, 259 F.3d at 199 (citations omitted). Indeed, "given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). Importantly, "[t]he gatekeeping role of the district court is particularly pronounced in condemnation proceedings under Rule 71.1." *United States v. 33.92356 Acres of Land*, 585 F.3d 1, 8 (1st Cir. 2009).

## B.  MVP's Motion to Exclude Testimony by Dennis Gruelle

MVP moves to exclude testimony by Gruelle about the fear associated with gas pipelines, based on interviews with brokers cited in his report, who stated, for example, that "[m]any buyers will not purchase properties encumbered by gas pipelines," are "afraid of a gas pipeline," and "do not want to look at properties with gas pipelines." (Appraisal Report of Dennis W. Gruelle 29–30, Dkt. No. 11-1.) The court has excluded such evidence before and will do so again in this case because "[t]here is no evidence linking the alleged diminution of these property sales to fear and stigma as opposed to other factors." *MVP v. 10.67 Acres* (Doe Creek), Civil Action Nos. 7:18-cv-00609, 7:18-cv-00611, 2019 WL 5929283, at *7 (W.D. Va. Nov. 12, 2019). Also, "anecdotal conversations relating to various fears or perceptions, without foundation, are entirely insufficient as a basis for expert testimony." *MVP v. 1.81 Acres* (Jones), Civil Action No. 7:19-cv-00151, 2019 WL 3945272, at *6 (W.D. Va. Aug. 21, 2019). Defendants cast the issue as being about

7

"marketability," but defendants have no evidence of a reasonably probable hazard and cannot prove a link to any diminution in market value.

MVP also moves to exclude any testimony by Gruelle about the impact of temporary construction, such as the "uncertain" impact of "existing springs, wells, drainage and (especially in sloping areas) soil compaction." (Gruelle Report 29.) First, the court notes that speculative testimony about "uncertain" future consequences is not admissible testimony. Additionally, because "compensable loss in the eminent domain context is limited to risks that are inherent in the easement," *Doe Creek*, 2019 WL 5929283, at *7, this evidence will be excluded. *See also MVP v. 1.30 Acres* (Baker), Civil Action No. 7:18-cv-00607, 2019 WL 4306981, at *8 (W.D. Va. Sept. 11, 2019).

**C. MVP's Motion in Limine**

### 1. Evidence of fear of pipelines and claims that many buyers would not purchase the property because of the Pipeline

This evidence is excluded for the same reasons stated above with respect to Gruelle's report.

### 2. Claims that the Pipeline is dangerous or unsafe, evidence of other pipeline accidents or incidents

For reasons similar to those for excluding fear of pipelines, the court has also excluded this type of evidence, and will do so again in this case. *See Doe Creek*, 2019 WL 5929283, at *7 (W.D. Va. Nov. 12, 2019) (excluding evidence because expert did not "rely on market evidence connecting pipeline safety, accidents, and fear and stigma associated with pipeline easements to diminution in value"); *Baker*, 2019 WL 4306981, at *5 (excluding evidence about high consequence areas (HCAs) and the potential impact radius of an explosion area in the event of a pipeline rupture because there is no "evidence that any hazard is reasonably probable and there is no causal link between any hazard, or perception thereof, and a diminution in value of the property");

8

*Jones*, 2019 WL 3945272, at *5 (excluding testimony because "an expert's opinions with regard to some hazard incident to the use of the property taken must be supported by some evidence that the hazards are reasonably probable and more than just speculative. Moreover, there must be a nexus between those hazards and/or the public perception in the marketplace . . . and a diminution in value of the property").

### 3. Evidence of alleged impact and possible damages from construction

This evidence is excluded for the same reasons set forth above with respect to Gruelle's report.

### 4. Evidence of other appraisals

MVP moves to exclude evidence of other appraisals referred to by Gruelle in his report. Defendants respond only to MVP's request to exclude a security appraisal performed by Joseph Thompson. Thompson is MVP's expert on just compensation, and defendants suggest that they may seek to use the prior security appraisal for impeachment purposes. At the hearing, MVP requested that the court defer ruling on this issue until MVP could submit further briefing. The court will therefore deny this part of MVP's motion as moot.

### 5. Examination of Joseph Thompson concerning vacated order

At the hearing, the parties indicated that they may be able to reach a stipulation on this issue. Therefore, the court will also deny this part of MVP's motion as moot.

### 6. Evidence of settlement offers and communications

Defendants do not object to the exclusion of this evidence, so the motion will be granted with regard to evidence of settlement offers and communications.

### 7. Evidence of amounts paid for easements on other properties

Defendants do not object to the exclusion of this evidence, so the motion will be granted

with regard to evidence of amounts paid for easements on other properties.

**D.  Defendants' motion for a jury view**

MVP does not object to a jury view in this case.  At the hearing, defendants indicated that they would submit a "Plan of View" for the court's consideration.  Because the trial has been continued and the court needs the opportunity to review any plan and consider the conditions at the time of trial, the motion will be denied without prejudice.  Defendants may resubmit a jury view request nearer to the time of trial.

**E.  Defendants' motion to open and close**

MVP does not object to defendants' request to open and close at trial and to sit at counsel table closest to the jury.  This motion will be granted.

### III.  CONCLUSION

For the reasons stated herein, MVP's motion to exclude the testimony of Dennis Gruelle (Dkt. No. 11) is GRANTED, MVP's motion in limine (Dkt. No. 12) is GRANTED IN PART and DENIED IN PART, defendants' motion to open and close at trial and sit nearest to the jury (Dkt. No. 18) is GRANTED, and defendants' motion for a jury view (Dkt. No. 16) is DENIED WITHOUT PREJUDICE.

Entered: November 30, 2020.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge